NOT DESIGNATED FOR PUBLICATION

No. 117,222

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

TRENA SUE SANTEE,
*Appellee*,

and

EDWARD W. SANTEE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed January 19, 2018. Affirmed.

*Shaye L. Downing*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for appellant.

*David J. Brown*, of Law Office of David J. Brown, LC, of Lawrence, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Edward W. and Trena S. Santee were issued a decree of divorce on June 24, 2013. Under the terms of the separation agreement adopted by the trial court, Edward was ordered to pay Trena maintenance in the form of 120 monthly payments of $1,900. On June 10, 2015, Edward filed a motion to modify maintenance based on the termination of his employment. Edward later amended his motion and moved to terminate maintenance alleging that Trena was cohabitating with a nonrelative person in a marital like relationship. Trena then filed a motion for attorney fees. On March 25, 2016,

1

the trial court denied Edward's motion to modify or terminate maintenance and granted Trena's motion for attorney fees, reserving determination of the amount of attorney fees for a later date. On March 29, 2016, Edward filed a timely notice of appeal and a motion to set aside the journal entry. On April 25, 2016, Trena filed a motion to dismiss Edward's appeal for failure to timely docket. In a memorandum opinion filed December 23, 2016, the trial court dismissed Edward's appeal of the maintenance ruling made March 25, 2016; denied Edward's motion to set aside the journal entry; and granted in part and denied in part Trena's motion for attorney fees. Edward filed a timely notice of appeal regarding the December 26, 2016 decision.

On appeal, Edward argues: (1) The trial court misinterpreted Kansas Supreme Court Rule 170 (2017 Kan. S. Ct. R. 216) in denying his motion to set aside the journal entry; (2) the trial court erred in dismissing his appeal; (3) the trial court erred in denying his motion to terminate maintenance based on Trena's alleged cohabitation with another person; (4) the trial court erred in denying his motion to modify maintenance based on the termination of his employment; (5) the trial court abused its discretion by considering income from separate property in ruling on his motion to modify maintenance; and (6) the trial court's ruling on attorney fees was not supported by sufficient evidence. Edward's arguments are not persuasive. Accordingly, the trial court's rulings are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Edward and Trena were married in Panhandle, Texas, on November 30, 1982. On August 16, 2012, just before the couple could celebrate their 30th wedding anniversary, Trena filed a petition for separate maintenance. On August 28, 2012, Edward filed his answer to Trena's petition and counterclaimed for divorce. Edward asserted that he and Trena were no longer compatible.

2

The parties entered into a Marital Separation and Property Settlement Agreement (Agreement) on June 19, 2013. The Agreement detailed that Edward was to pay maintenance payments to Trena for 120 consecutive months in the amount of $1,900 beginning June 1, 2013. Under the Agreement, maintenance would terminate upon Trena's "cohabitation . . . with a nonrelative person in a marital like relationship as set forth under Kansas law." The Agreement also stated that the trial court would "reserve jurisdiction to reduce maintenance pursuant to K.S.A. 23-2903 downward only."

On June 24, 2013, the trial court adopted the terms of the Agreement and issued a decree of divorce on the grounds that Edward and Trena were incompatible. On May 19, 2014, Edward filed a motion to reduce maintenance arguing that his total income had decreased since the divorce and that Trena's income had increased since the divorce. The trial court denied Edward's motion.

About a year later, Edward hired a new attorney. The attorney filed an entry of appearance on June 10, 2015. On that same day, Edward filed his second motion to modify maintenance arguing that a material change in circumstances had occurred because his employment had been terminated on March 6, 2015. Edward had been a senior vice-president for Cumulus Media for about six or seven years before he was terminated. Edward informed the court that he had received a 90-day severance package, which had ended June 4, 2015. He also revived his argument that Trena's income had increased substantially which constituted a material change in circumstances warranting modification of maintenance. On August 31, 2015, Trena filed her answer to Edward's motion to modify maintenance and made her own motion for attorney fees. On October 22, 2015, Edward amended his motion to modify maintenance arguing that maintenance should actually be terminated under the Agreement because Trena was cohabitating with a nonrelative person in a marital like relationship.

3

Trena filed a motion for an order to appear and show cause relating to Edward's failure to pay maintenance under the Agreement on November 6, 2015. Trena alleged that Edward had failed to make his $1,900 maintenance payments in September through November 2015.

On February 22, 2016, an evidentiary hearing was held on Edward's motion to modify or terminate maintenance, Trena's motion for attorney fees and costs, and Trena's motion for an order to appear and show cause. The hearing was completed on March 2, 2016, with the trial court announcing its rulings from the bench. On March 8, 2016, Trena filed a notice of submission of a proposed journal entry and order regarding maintenance and attorney fees memorializing the trial court's rulings. Pursuant to Supreme Court Rule 170, Trena's attorney sent a copy of the proposed journal entry to Edward's attorney for approval. The notice stated that Edward had 14 days to notify Trena of any objections to the proposed journal entry and if Trena did not receive any objections, she would file the proposed journal entry with the trial court.

The trial court filed its journal entry on March 25, 2016, covering: (1) Edward's motion to modify or terminate maintenance; (2) the issue of attorney fees and costs requested by Trena; and (3) Trena's motion for order to appear and show cause related to Edward's failure to make timely maintenance payments.

The trial court ruled Edward had failed to meet his burden of proving that Trena was cohabitating with a nonrelative person in a marital like relationship. The court specifically ruled:

> "The facts presented at trial indicate[d] that [Trena] was in a dating like relationship, but that [Trena] and her alleged boyfriend did not live together, never commingled finances, and did not hold themselves out as husband and wife. Furthermore, the facts presented by [Edward] that the alleged boyfriend watched [Trena's] dog, had sleepovers at [Trena's]

4

residence, and had a garage opener are not sufficient to rise to the level of cohabitation, as those acts are common in modern dating relationships."

The trial court also ruled that Edward had failed to show a material change in circumstances warranting a modification of maintenance. After taking the "overall financial circumstances of the parties" into account, the trial court found Edward had "failed to meet his burden of proof in showing his loss of employment affected his standard of living or his ability to pay." Specifically, the trial court found: "While loss of employment may certainly constitute a material change in circumstances for some individuals who rely solely on their earned income, the facts do not indicate [Edward's] overall financial condition has changed substantially due to his additional sources of income." Finally, in relation to Edward's motion to modify maintenance, the trial court ruled Edward had failed to meet his burden of proof that Trena's increase in income constituted a material change in circumstances warranting modification of maintenance. Accordingly, the trial court denied Edward's motion to modify or terminate maintenance.

Next, the trial court considered Trena's motion for an order to appear and show cause ruling that Edward was violating the terms of the Agreement as he had failed to make maintenance payments from September 2015 through March 2016. The court ruled that Edward could purge himself of the contempt by paying the total maintenance past due—$11,800.

Finally, the trial court considered Trena's motion for attorney fees and costs. Finding good cause the trial court granted her motion and noted that "until the issue of whether attorney fees shall be awarded has been decided, it is not appropriate to weigh the amount and reasonableness of the fees prematurely at trial." The trial court set a hearing on the motion for attorney fees for May 17, 2016; however, the transcript from the May hearing was not made part of the record on appeal.

5

Edward filed a motion to set aside the journal entry and order regarding maintenance and attorney fees. Edward asserted that on March 22, 2016, he submitted objections to Trena regarding her proposed journal entry. Edward also claimed that his attorney's electronic signature was attached to the proposed order without permission and that he had requested Trena withdraw the proposed journal entry before it was filed. In her response to Edward's motion, Trena asserted that she did not receive Edward's objections until March 24, 2016.

On March 29, 2016, Edward also filed a notice of appeal of "all final orders and decisions . . . as set forth in the Journal Entry entered March 25, 2016, and all prior or subsequent orders thereto as they relate to spousal maintenance." On April 25, 2016, Trena filed a motion to dismiss Edward's appeal. Trena specifically argued that Edward's motion to set aside the journal entry and order did not toll the time for appeal. Thus, Trena argued that because Edward had failed to file a docketing statement within the required 21-day period following the filing of his notice of appeal, he had abandoned his appeal. On April 29, 2016, Edward filed a response to Trena's motion to dismiss his appeal. Edward argued that his notice of appeal was a premature notice of appeal because his motion to set aside the journal entry under K.S.A. 60-260 was still pending before the trial court. Thus, Edward argued that the actual journal entry and order was still pending before the trial court.

The trial court heard Trena's motions for attorney fees and to dismiss Edward's appeal and Edward's motion to set aside the journal entry on May 17, 2016. Importantly, that hearing transcript was not made available in the record on appeal.

On December 23, 2016, the trial court issued its memorandum decision. The trial court noted that Edward "neither included in his motion nor otherwise presented at the hearing the particulars of any objections" he had to the journal entry prepared by Trena's attorney. Thus, the trial court reviewed the journal entry to determine whether it fairly

6

represented its ruling. The trial court ruled: "While the journal entry includes reasoning not specifically articulated by the Court on March 2, 2016, the journal entry accurately reflects the disposition of each of the pending issues as pronounced by the Court." Accordingly, the trial court denied Edward's motion to set aside the journal entry.

Next, the trial court ruled on Trena's motion to dismiss Edward's appeal. The trial court noted that Edward's "Notice of Appeal was clearly aimed at the issues disposed of by the March 2, 2016 hearing as journalized and entered of record on March 25, 2016." The trial court rejected Edward's argument that his notice of appeal was a premature notice of appeal under Supreme Court Rule 2.03(b) (2017 Kan. S. Ct. R. 14). The trial court ruled that Edward's "Notice of Appeal was effective to challenge the Court's rulings on the issue of spousal maintenance." But because Edward had failed to timely file his docketing statement, the court ruled that he had abandoned the appeal. Accordingly, the trial court granted Trena's motion to dismiss Edward's appeal.

Finally, the trial court ruled on Trena's motion for attorney fees. The trial court went through an itemized list of Trena's requested attorney fees and denied some of her requests and granted others. In all, the trial court awarded Trena attorney fees in the amount of $5,659. She had originally requested attorney fees in the amount of $30,956.

On January 20, 2017, Edward filed a timely notice of appeal "from all final orders and decisions . . . as set forth in the Memorandum Decision entered December 23, 2016[.]"

ANALYSIS

Edward's argument under his first issue proves difficult to track. First, Edward argues the trial court erred in interpreting Supreme Court Rule 170. He argues that Trena's proposed "journal entry was submitted in error, executed in error, and

undisputedly contained errors that were not supported by the evidence or found by the court." Edward is challenging the trial court's ruling on his motion to set aside the journal entry filed March 25, 2016. After concluding his argument on Supreme Court Rule 170, Edward also asserts that the trial "court committed further error when it ordered that [his] appeal was abandoned and would be dismissed." It would appear, then, that Edward has really presented two issues within the framework of his first issue. These two issues will be treated separately.

DID THE TRIAL COURT ERR IN INTERPRETING AND APPLYING SUPREME COURT RULE 170 TO DENY EDWARD'S MOTION TO SET ASIDE THE JOURNAL ENTRY?

In his motion to set aside the journal entry, Edward argued that Trena's counsel had failed to procedurally comply with Supreme Court Rule 170. On appeal, Edward presents the same argument: Trena's proposed "journal entry was submitted in error, executed in error, and undisputedly contained errors that were not supported by the evidence found by the court."

Supreme Court Rule 170 covers the preparation of an order by a party at the direction of the trial court. When the trial court directs a party to prepare an order, that party has 14 days (1) to serve opposing counsel of record a copy of the proposed order; (2) to serve opposing counsel of record notice that unless an objection to the proposed order is received within 14 days, the order will be filed with the court; and (3) to file with the trial court a certificate of service with a copy of the proposed order and notice attached. Supreme Court Rule 170(b). "An objection to a proposed order must be served—not later than 14 days after service of the proposal—on the party that drafted it." Supreme Court Rule 170(c) (2017 Kan. S. Ct. R. 216). If no timely objections are received by the drafting party, that party must submit the original proposed order to the court for approval. If a timely objection is received by the drafting party, "the parties must make a reasonable effort to confer to resolve the objection and, if agreement is

8

reached, the drafter must submit the agreed journal entry to the court for approval." Supreme Court Rule 170(d)(2) (2017 Kan. S. Ct. R. 217). If the parties cannot reach an agreement, even after reasonable efforts to confer, "the drafter must submit the original draft and the objection to the court and the court must settle the order, with or without a hearing." Supreme Court Rule 170(d)(3) (2017 Kan. S. Ct. R. 217).

Before we consider Edward's arguments, we should note that this issue was taken up at the hearing held May 17, 2016. The transcript of that hearing is not included in the record on appeal. The burden to designate the appellate record with facts supporting a claim is on the party making the claim. Without a complete record, the claim of error generally fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

The trial court articulated in its decision on Edward's motion to set aside that the motion "was presented with little argument at the May 17, 2016, hearing. Along with proffers of counsel, the [trial] [c]ourt deems the matter as submitted on the motion/response and without any request for the [c]ourt to hear evidence to resolve any disputes in the respective proffers." On appeal, we have Edward's motion and Trena's response, but we do not have the proffers that counsel made at the hearing. Based on the trial court's decision, those proffers proved to be an essential part of the trial court's decision-making process. Thus, Edward has failed to meet his burden to designate the record on appeal. We have no meaningful way to review the issue. Edward's claim of error fails.

Using only Edward's motion and Trena's response along with the trial court's order, in all events the trial court did not err in denying Edward's motion to set aside the journal entry. Edward's arguments are strictly procedural. The trial court described the motion as "premised entirely on alleged procedural shortcomings in how the motion was prepared/submitted." On appeal, Edward specifically asserts that he had submitted timely

9

objections to Trena under Supreme Court Rule 170(c). Edward also asserts that Trena's counsel had submitted the proposed journal entry with his attorney's unauthorized electronic signature. He argues that the trial court "arbitrarily and without any specified reason disregarded these facts which were not disputed." Next, Edward asserts that the trial "court's decision is seemingly arbitrary when it specifically finds that the proposed journal entry contains findings or 'reasoning' that was not articulated by the court, but does not set the ruling aside or otherwise amend it."

This court has held that Supreme Court Rule 170

"is designed to allow the court some assistance in memorializing court orders. [Citation omitted.] The court is always free to draft its own journal entry without any assistance from counsel. By ordering one party to prepare the journal entry and another to review it, the parties can be assured that the journal entry truly reflects the court's order. Enforcement of the rule is left to the sound discretion of the district court, since its whole purpose is to provide assistance to the court. Therefore, for an appellate court to reverse or remand a case due to failure comply with this procedural rule would be rare and we are unable to locate any such Kansas cases." *In re Marriage of Anjard*, No. 103,426, 2011 WL 5389679, at *8 (Kan. App. 2011) (unpublished opinion).

Because the enforcement of Supreme Court Rule 170 falls within the sound discretion of the trial court, a trial court's application of the rule will only be overturned for abuse of discretion. A trial court's action constitutes an abuse of discretion (1) when no reasonable person would adopt the view taken by the trial court; (2) when it is based on an error of law; or (3) when it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

This court has applied the reasoning from *In re Marriage of Anjard* and held that the failure to comply with the procedural requirements of Supreme Court Rule 170 is not particularly problematic when the complaining party has the opportunity to present its

10

objections to the trial court. See *In re Marriage of Crouse*, No. 113,831, 2016 WL 3856677, at *5 (Kan. App. 2016) (unpublished opinion).

Here, in the end, the trial court was able to review the proposed journal entry in light of Edward's motion to set aside the journal entry. Edward was provided the opportunity to argue his objections at the hearing held May 17, 2016. We do not have the benefit of reviewing the transcript from that hearing, but based on the trial court's decision, we know that Edward did not seize upon that opportunity. Moreover, Edward also fails on appeal to present any substantive objections to Trena's proposed journal entry. Thus, Edward fails to show how he was actually prejudiced by the trial court's actions. The failure to support a point with pertinent authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). When an appellant fails to brief an issue, that issue is deemed abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

For those reasons, Edward has failed to show that the trial court abused its discretion in denying his motion to set aside the journal entry based on its application of Supreme Court Rule 170. The trial court reviewed the journal entry and found that "[w]hile the journal entry includes reasoning not specifically articulated by the Court on March 2, 2016, the journal entry accurately reflects the disposition of each of the pending issues as pronounced by the Court." Because the purpose of Supreme Court Rule 170 is to provide assistance to the court in drafting orders, where the trial court reviews and approves the order after providing the nondrafting party an opportunity to voice objections, we cannot say that the trial court abuses its discretion.

On March 25, 2016, the trial court filed its journal entry covering: (1) Edward's motion to modify or terminate maintenance; (2) the issue of attorney fees and costs requested by Trena; and (3) Trena's motion for order to appear and show cause related to Edward's failure to make timely maintenance payments. On March 29, 2016, Edward filed the motion to set aside the journal entry discussed above. On that same day, Edward filed a notice of appeal "from all final orders and decisions . . . as set forth in the Journal Entry entered March 25, 2016, and all prior or subsequent orders thereto as they relate to spousal maintenance to the Kansas Court of Appeals."

On April 25, 2016, Trena filed a motion to dismiss Edward's appeal, arguing that he had failed to comply with Supreme Court Rule 2.04 (2017 Kan. S. Ct. R. 15). Trena specifically asserted that under Supreme Court Rule 2.04, Edward was required to docket his appeal within 21 days of filing his notice of appeal. Edward argued that his notice of appeal was a premature notice of appeal under Supreme Court Rule 2.03 because his motion to set aside was still pending before the court, which meant that the journal entry relating to maintenance was still pending before the court.

The trial court addressed the issue at the May 17, 2016 hearing. Again, the transcript for that hearing is not available on appeal. The trial court's decision on Trena's motion to dismiss Edward's appeal stated:

> "[Edward] filed a Notice of Appeal on March 29, 2016, that specifically references 'all final orders and decisions of the District Court . . . as set forth in the Journal Entry entered March 25, 2016, and all prior or subsequent orders thereto as they relate to spousal maintenance.' [Trena] asserts that consistent with Sup. Ct. Rule 2.04, a docketing statement . . . was due April 19, 2016, and alleging that none has been filed,

12

[Trena] asks this Court to find that the appeal is presumed abandoned as permitted by Sup. Ct. Rule 5.051(a).

"[Edward] asserts that because he filed the Motion to Set Aside the March 2, 2016 journal entry (characterizing it as a timely-filed K.S.A. 60-260 motion), said journal entry 'is also still pending before the Court and not yet finalized.'

"The statute itself makes it clear this is not an accurate statement. 'The motion does not affect the judgment's finality or suspend its operation' K.S.A. 60-260(c)(2). The principle is well-established in appellate opinions. . . .

"Citing Sup. Ct. Rule 2.03(b), [Edward] characterizes the notice of appeal as timely because the 'Court has not entered any order disposing' of [Edward's] motion to set aside the journal entry'. But this Court notes that the notice of appeal does not relate to the disposition of the motion to set aside the journal entry but, rather, the substance of the rulings in the journal entry that was, in fact, filed and is, in law, a final judgment as of March 25, 2016. K.S.A. 60-258.

"[Edward's] obligation was to docket the appeal within 30 days of the entry of that final judgment. K.S.A. 60-2103. That statute does list certain motions which will toll that 30 day limitation but a motion under K.S.A. 60-260 is not one of those motions. As already pointed out, K.S.A. 60-260(c)(2) contains the language that makes it clear that a motion for relief under that statute does not suspend the finality of the judgment.

"[Edward's] Notice of Appeal was clearly aimed at the issues disposed of by the March 2, 2016 hearing as journalized and entered of record on March 25, 2016. The subsequent motion to set aside that journal entry has been denied. In reviewing the language of the Notice, the Court does not find language that embraces the idea of a premature notice of appeal as contemplated by Sup. Ct. Rule 2.03(b) pertaining to the outcome of the decision on the Motion to Set Aside that journal entry. The Notice of Appeal was effective to challenge the Court's rulings on the issue of spousal maintenance. Having failed to timely prosecute that appeal by the filing of a docketing statement in compliance with Sup. Ct. Rule 2.04, and consistent with Sup. Ct. Rule 5.051(a), the Court believes it is proper to find that the appeal has been abandoned and find that the appeal should be, and is hereby, dismissed."

The trial court's reasoning is sound. Supreme Court Rule 2.04(a)(1) states that an appellant must docket his or her appeal no later than 21 days after filing a notice of

appeal by filing certain documents identified in the rule with the clerk of the appellate courts. Here, it is not disputed that Edward failed to docket his appeal within 21 days of filing his notice of appeal on March 29, 2016. There is a dispute, however, as to whether Edward's motion to set aside the journal entry excused his failure to docket his appeal within 21 days.

Edward argues that "[w]hether the motion to set aside was filed pursuant to K.S.A. § 60-252(b) or K.S.A. § 60-260, the time to docket the appeal was tolled until the district court ultimately ruled on the motion." Edward goes on to argue that the "journal entry should have been set aside pursuant to K.S.A. § 60-252(b)." But, as Trena points out, Edward identified his motion to set aside as one made under K.S.A. 60-260. Edward did not argue that his motion to set aside was made under K.S.A. 60-252(b). Issues that are not raised before the trial court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Accordingly, review of Edward's motion to set aside must be reviewed as a motion filed under K.S.A. 60-260.

Edward argues that even if the trial court was correct in finding that his motion to set aside was filed under K.S.A. 60-260, Supreme Court Rule 2.03(b) "specifically and unambiguously states that notice of appeal must be filed 30 days after the order disposing of the motion for relief under K.S.A. § 60-260 is issued." Thus, Edward asserts that his notice of appeal filed March 29, 2016, was a premature notice of appeal under Supreme Court Rule 2.03(b), because the motion to set aside and, thus, the underlying spousal maintenance order, was still pending before the trial court.

A party intending to challenge an order disposing of a K.S.A. 60-260 motion "must file a notice of appeal . . . not later than 30 days after the entry of the order disposing of the last such remaining motion[.]" Supreme Court Rule 2.03(b) (2017 Kan. S. Ct. R. 15). "A motion filed pursuant to K.S.A. 60-260(b) for relief from a judgment

14

does not affect the finality of the judgment or suspend its operation, nor does it toll the time for filing a notice of appeal from such judgment." *Giles v. Russell*, 222 Kan. 629, Syl. ¶ 2, 567 P.2d 845 (1977).

Edward confuses the time for docketing his appeal from the trial court's order filed March 25, 2016, with the time for filing his notice of appeal from the trial court's order disposing of his motion to set aside the journal entry filed December 23, 2016. Edward complied with Supreme Court Rule 2.03(b) when he filed his timely notice of appeal on January 20, 2017—within 30 days of the trial court's order disposing of his motion to set aside under K.S.A. 60-260. His notice of appeal filed March 29, 2016, on the other hand, specifically stated that Edward was taking appeal "from all final orders and decisions . . . *as they relate to spousal maintenance*." Supreme Court Rule 2.03(b) had no bearing on whether the time for docketing Edward's appeal had been tolled. It is clear from Edward's notice of appeal filed March 29, 2016, that he was taking appeal from the trial court's order relating to spousal maintenance that was filed March 25, 2016. Accordingly, Edward was required to docket his appeal within 21 days of March 29, 2016—the day on which he filed his notice of appeal. Edward failed to meet that deadline.

Having established that the time for appeal was not tolled by Edward's motion to set aside the journal entry, we now turn to the application of Supreme Court Rule 5.051 (2017 Kan. S. Ct. R. 32). "When an appellant has filed a notice of appeal in the district court, but has failed to docket the appeal in compliance with Rule 2.04, the appeal is presumed abandoned and the district court may enter an order dismissing the appeal." Supreme Court Rule 5.051(a) (2017 Kan. S. Ct. R. 32-33). "The order of dismissal shall be final unless the appeal is reinstated by the appellate court having jurisdiction of the appeal for good cause shown on application of the appellant made within 30 days after the order of dismissal was entered by the district court." *City of Kansas City v. Lopp*, 269 Kan. 159, Syl. ¶ 1, 4 P.3d 592 (2000); see also Supreme Court Rule 5.051(b) (same).

15

Although Edward filed a timely notice of appeal with regard to the March 29, 2016 order ruling on spousal maintenance, attorney fees, and court costs, the district court dismissed that appeal based on Edward's failure to docket the appeal within 21 days of filing the notice of appeal. Because Edward did not file an application for reinstatement of his appeal within 30 days of the dismissal, the order of dismissal became final. Given this procedural history, the district court correctly found that we are precluded from considering the merits of Edward's claims on appeal. But even if we were not procedurally precluded from considering Edward's appeal, the following discussion reveals that the claims set forth by Edward in his notice of appeal would fail on their merits.

## DID THE TRIAL COURT ERR IN DENYING EDWARD'S MOTION TO TERMINATE MAINTENANCE BASED ON A CLAIM OF COHABITATION?

Edward argues that the trial court "arbitrarily disregarded the undisputed evidence presented regarding cohabitation, resulting in a finding that there was no cohabitation, which was not supported by the evidence." Edward specifically argues that the trial court arbitrarily disregarded the testimony of Trena's boyfriend and of the private investigators hired to investigate whether Trena was cohabitating with another person. It must be noted that the testimony of Trena's boyfriend is not included in the record on appeal. He did not testify at the hearing held February 22, 2016. There is mention of his deposition testimony being offered as an exhibit at that hearing. However, the deposition is likewise not included in the record on appeal.

Edwards recites facts derived from the testimony but he fails to instruct this court on any working definition of cohabitation or cite any legal authority whatsoever in support of his position. Again, the failure to support a point with pertinent authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth.*, 301 Kan. at 1001. And when an appellant fails to brief an issue, that issue is deemed abandoned. *Superior Boiler*

16

*Works, Inc.*, 292 Kan. at 889. Accordingly, Edward has abandoned this issue, and his argument fails.

Even if Edward had not abandoned the issue, he has presented insufficient facts to show the trial court arbitrarily disregarded evidence that its decision was based on some extrinsic motivation. The trial court ruled:

"The facts presented at trial indicate[d] that [Trena] was in a dating like relationship, but that [Trena] and her alleged boyfriend did not live together, never commingled finances, and did not hold themselves out as husband and wife. Furthermore, the facts presented by [Edward] that the alleged boyfriend watched [Trena's] dog, had sleepovers at [Trena's] residence, and had a garage opener are not sufficient to rise to the level of cohabitation, as those acts are common in modern dating relationships."

The trial court clearly considered the evidence. Accordingly, Edward's argument fails.

### DID THE TRIAL COURT ERR IN DENYING EDWARD'S MOTION TO MODIFY MAINTENANCE BASED ON A MATERIAL CHANGE IN CIRCUMSTANCES?

The trial court ruled that "[b]cause fluctuation in [Edward's] income was foreseeable at the time the Agreement was signed, particularly due to [Edward's] age, his loss of employment . . . is not enough to rise to a material and permanent change in circumstances warranting a modification of maintenance." The trial court noted that Edward "is highly qualified and skilled and can find employment if he chooses to do so." That finding was based on the fact that Edward believed he might be rehired by his former employer, who told Edward to "keep the doors open." Additionally, Edward had not actually applied for employment with any other company since his employment was terminated. The trial court also ruled that Edward "failed to meet his burden of proof in showing his loss of employment affected his standard of living or his ability to pay."

17

This court reviews a trial court's decision to grant or deny a motion to modify spousal maintenance by reviewing the record to determine whether the trial court's factual findings are supported by substantial competent evidence and whether the trial court abused its discretion. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011). A judicial action constitutes an abuse of discretion (1) if no reasonable person would take the view adopted by the trial court; (2) if it is based on an error of law; or (3) if it is based on an error of fact. *Wiles*, 302 Kan. at 74.

As a threshold issue, we must once again point out Edward's failure to cite any legal authority in support of his position. The failure to support a point with pertinent authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth.*, 301 Kan. at 1001. And when an appellant fails to brief an issue, that issue is deemed abandoned. *Superior Boiler Works, Inc.*, 292 Kan. at 889. Accordingly, Edward has abandoned this issue, and his argument fails.

Even if we were to reach the substance of Edward's argument, however, we would see that the trial court's findings were supported by substantial competent evidence and the trial court did not abuse its discretion in ruling that Edward had failed to show a material change in circumstances warranting a modification of his maintenance obligation.

Edward argues that "no reasonable person would find that a party is required to cash out their retirement, sell their home, or otherwise liquidate assets . . . in order to meet these [maintenance] obligations." Edward's argument is hyperbole. Prior to his termination from Cumulus, Edward was receiving an annual salary of $158,103.24. Edward acknowledged he received a severance package as part of his termination. Edward also admitted that he had obtained a consulting contract worth $56,000 in 2015 and that he had not sought out any position for salaried employment since being terminated by Cumulus. When asked why he had not sought out lesser-paying jobs,

18

Edward testified that he had "other income." Edward had an investment account with a balance of $325,000 at the time of the hearing. Additionally, Edward received a yearly payout from a trust of which he was a beneficiary. In 2013, the trust paid Edward $32,698.63; in 2014, the trust paid Edward $61,445.52; and in 2015 the trust paid Edward $32,418.30.

> After reviewing that evidence, the trial judge ruled that Edward

> "had a job that paid a good wage. But, quite frankly, when I consider what evidence was presented to show how the loss of that job impacted his overall financial condition, there just wasn't a lot of evidence to convince me that his loss of job was a material impact on his overall financial condition and his ability to pay.
>
> . . . .
>
> "I—I think that he's—he's certainly had a basis for the court to consider the issue. But when I consider that his burden was to convince me that his overall circumstance had changed, I'm not sure that—I don't believe he's met that burden."

Accordingly, the trial court ruled Edward had "failed to meet his burden of proof in showing his loss of employment affected his standard of living or his ability to pay."

This court has recognized that no case has precisely defined "change in circumstances" as it relates to the proposed modification of spousal maintenance. *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 968, 911 P.2d 192 (1996). Our courts have defined change in circumstances in other contexts, however, recognizing that "'[a] material change of circumstances' . . . requires consideration of a variety of facts and circumstances. A material change in circumstances must be of such a substantial and continuing nature as to make the terms of the initial decree unreasonable. [Citations omitted.]" *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 887, 125 P.3d 1081 (2006).

19

This court in *In re Marriage of Ehinger*, 34 Kan. App. 2d 583, 590, 121 P.3d 467 (2005), affirmed a trial court's order to temporarily modify maintenance from $1,200 per month down to $170 per month where a former husband's monthly income had dropped from $9,009.38 to approximately $400. The trial court ordered maintenance be modified downward for a period of six months while the former husband looked for other income-producing opportunities. In *In re Marriage of Ehinger*, the former husband's employment had been terminated. He collected unemployment while he sent out 2,800 resumes in an attempt to find a new job. He was unsuccessful, so he emptied his portion of his retirement account to start an advertising business. The new business was not producing income. Thus, he filed a motion to modify maintenance, which the court granted.

*In re Marriage of Ehinger* stands in stark contrast to Edward's situation. Edward did not actively search for a new job because he did not need one. He relied on his other income streams to support himself. He still had access to his investment account and was receiving a yearly payout from a trust. He was also operating a consulting business that had recently been awarded a contract worth $56,000. Based on those facts, substantial competent evidence supports the trial court's factual finding that Edward had failed to show a material change in circumstances that was substantial and continuing in nature. Thus, the trial court did not abuse its discretion.

DID THE TRIAL COURT ERR IN CONSIDERING EDWARD'S OVERALL FINANCIAL SITUATION IN DETERMINING WHETHER HE HAD EXPERIENCED A MATERIAL CHANGE IN CIRCUMSTANCES?

In the trial court's ruling on Edward's motion to modify maintenance, the court specifically ruled that an "analysis into a material change in circumstances requires an examination of the overall financial circumstances of the parties. The Court is not limited in considering all sources of [Edward's] income in his ability to pay maintenance." Edward argues the trial court's consideration of his other income from property explicitly excluded by a prenuptial agreement between he and Trena was an abuse of discretion.

20

This issue is a sort of continuation of the issue just discussed. In addition to reviewing the trial court's actions for an abuse of discretion, this court may need to interpret certain agreements between the parties. This court exercises unlimited review over the interpretation and legal effect of written instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

Edward and Trena entered into an antenuptial agreement on September 23, 1982. The antenuptial agreement identified certain separate property brought to the marriage by Edward and Trena and made it known that "each desires to retain such separate property, the income therefrom, and any property obtained through investment of the proceeds from the sale thereof, free from any claim or right of any nature whatsoever of the other that might otherwise arise of be acquired by reason of the intended marriage . . . ." The prenuptial agreement specifically indicated that after they were married, Edward and Trena were to

> "retain all rights in his or her separate property, which shall include any property hereinafter inherited by or given to either of them, together with all increases thereto and income derived therefrom, and any property obtained through investment of the proceeds from the sale of such property, and each of them shall have the absolute and unrestricted right to hold, enjoy, control, manage, encumber, or mortgage, such separate property, free and clear of any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them."

Edward argues that the "[pr]enuptial [a]greement clearly provides that Trena is not entitled to any interest in Edward's separate property, specifically including any income derived therefrom." Edward argues that the trial court abused its discretion because it considered his income from his separate property in determining whether he had undergone a material change in circumstances affecting his ability to pay his monthly maintenance obligation. Trena argues, on the other hand, that the agreement entered into at the time of the divorce supersedes the prenuptial agreement. Trena also argues that she

21

"is not claiming any right or interest in [Edward's] income sources, she is simply demanding that he pay the sums due under her contract with him." The contract that she is referring to is the Agreement signed in contemplation of their divorce. The Agreement makes no mention of the parties' prenuptial agreement.

In determining whether the trial court abused its discretion in considering the agreements, it is helpful to look at the history of the case. On May 19, 2014, Edward filed his first motion to reduce maintenance, alleging that a material change in circumstances had occurred which justified a reduction in his maintenance obligation to Trena. On July 2, 2014, Edward filed a memorandum in support of his motion to reduce maintenance. In that memorandum, Edward explicitly stated that there had been a material change in circumstances because his "separate income from his farm and disbursement from his mother's trust have declined significantly from the amount previously considered in maintenance awarded to [Trena]." In relation to Edward's first motion to reduce maintenance, however, Trena argued that maintenance was only calculated using Edward's salaried income and not income from separate property that was outside the marital estate. The trial court noted that the "incomes from [Edward's] investments were excluded from [Edward's] income used to calculate maintenance. As [Trena] points out, she agreed to an amount less than the Douglas County guidelines suggested, based solely upon [Edward's] annual wages." The court also ruled, however, that the fluctuations in income from separate property "were within the contemplation of the parties at the time of the decree when they agreed upon a maintenance amount."

The trial court's ruling on Edward's first motion to modify maintenance only muddies the waters in relation to whether the trial court properly considered Edward's overall financial condition in his current motion to modify maintenance. A review of the record makes it clear that both parties have taken stances on both sides of the issue when it serves their interests. While the initial determination of the amount of maintenance may have been solely based on Edward's salaried income, as the trial court noted, it was also

made with the knowledge that each parties' separate income was likely to be variable. And because both parties have argued both sides of the issue, we cannot say that the trial court abused its discretion in considering Edward's overall financial condition in determining whether he had experienced a material change in circumstances justifying a reduction in his maintenance obligation.

"Maintenance settled by a separation agreement that is incorporated into the divorce decree is not subject to subsequent modification by the court except as prescribed by the agreement or as subsequently consented to by the parties." *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, Syl. ¶ 1. Here, the Agreement did not limit what the trial court could consider in determining whether maintenance should be modified. As Trena points out, the trial court's consideration of Edward's overall financial condition—including his income from separate property—did not confer any right in that income to her. Instead, the trial court simply considered Edward's ability to pay the maintenance obligation that he had agreed to pay. The trial court considered whether Edward's loss of employment amounted to a material change in circumstances.

Moreover, looking back to the facts of *In re Marriage of Ehinger* it becomes apparent that Edward has not met his burden of proving that he has experienced a material change in circumstances. Edward admitted at the hearing on his current motion that he was not seeking further salaried employment because he did not need the income. Edward should not be able to skirt his maintenance obligation by simply failing to seek further employment and claiming a material change in circumstances. Had he experienced a material change in circumstances, Edward would be actively seeking new employment—which he is not because his separate income and income from consulting jobs has allowed him to continue living comfortably. For those reasons, we cannot say that the trial court abused its discretion in considering Edward's overall ability to pay maintenance in determining whether he had experienced a material change in circumstances.

23

## DID THE TRIAL COURT ERR IN DETERMINING THE AMOUNT OF ATTORNEY FEES TO BE AWARDED TO TRENA?

In its December 23, 2016 memorandum decision, the trial court awarded Trena attorney fees in the amount of $5,659. Trena had requested attorney fees in the amount of $30,956. The trial court considered the procedural history of the case and found "that [Edward] is pursuing these motions from a very personal, emotional place which affects his ability to accept the legal obligations to which he assented when he negotiated the settlement agreement in this case." The trial court walked through an itemized list of Trena's requested attorney fees in reaching its decision noting that evidence was presented at the hearing held May 17, 2016.

Trial courts are vested with wide discretion in determining the amount and recipient of attorney fees. When reviewing an award, the appellate court will not reweigh the testimony or the evidence presented or reassess the credibility of witnesses. So long as an award is supported by substantial competent evidence, it will not be set aside on appeal. *In re Marriage of Strieby*, 45 Kan. App. 2d at 973. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). Trial courts are experts in the area of attorney fees and may draw on and apply their knowledge and expertise in determining an award's reasonable value. Appellate courts too are experts on the reasonableness of attorney fees. *In re Marriage of Strieby*, 45 Kan. App. 2d at 975. Still, appellate courts do not substitute their judgment for that of the trial court on the specific amount of attorney fees awarded absent a showing of abuse of discretion. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). A judicial action constitutes an abuse of discretion (1) if no reasonable person would take the view adopted by the trial court; (2) if it is based on an error of law; or (3) if it is based on an error of fact. *Wiles*, 302 Kan. at 74.

In considering the reasonableness of an award of attorney fees, the eight factors set forth in Rule 1.5(a) (2017 Kan. S. Ct. R. 292) of the Kansas Rules of Professional Conduct (KRPC) should be analyzed. Those eight factors are:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee is customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." KRPC 1.5(a) (2017 Kan. S. Ct. R. 292).

It must be noted that while the trial court awarded Trena attorney fees, the court denied the majority of the fees Trena requested. The trial court denied Trena's following requests:  (1) $9,025 in relation to Edward's motion to modify maintenance filed May 19, 2014, finding that the motion raised substantial legal issues; (2) $3,325 in relation to Edward's motion to compel discovery filed in July 2014; (3) $12,147 for Edward's late filing of his amended motion to modify or terminate maintenance based on cohabitation, finding no basis to conclude the filing was done in bad faith; and (4) $425 and $375 on Edward's motion to set aside and Trena's motion to dismiss Edward's appeal, finding that the issues were within the scope of reasonable dispute. The trial court granted Trena's following requests:  (1) $1,447 in responding to Edward's request for improper discovery; (2) $500 for prosecuting her contempt action against Edward; and (3) $3,712 in relation to Trena's December 2, 2015 motion to compel discovery.

Edward argues that the trial court's award of attorney fees was unreasonable and not supported by any evidence. Thus, Edward argues that the trial court abused its discretion. We must point out, however, that the transcript of the May 17, 2016 hearing is not included in the record on appeal. The burden to designate the appellate record with facts supporting a claim is on the party making the claim; without a complete record, the claim of error generally fails. *Friedman*, 296 Kan. at 644-45.

Here, the trial court's order relating to attorney fees expressly states: "The Court specifically reserved evidence on [the] issue [of attorney fees] at the time of the March [2, 2016] trial and indicated it would be determined at the May [17, 2016] hearing." Accordingly, it is clear that the evidence relating to the trial court's award of attorney fees was presented at the May 17, 2016 hearing. Since we do not have the transcript of that hearing, we are left to guess at what evidence the trial court relied on in calculating its award of attorney fees. Trena argues that we can look to her memorandum in support of her motion for attorney fees in determining whether the fees awarded were reasonable. Indeed, Trena's memorandum in support of her motion specifically cites and walks through each of the factors identified in KRPC 1.5(a). The memorandum certainly shows that Trena supported her argument relating to attorney fees with the correct authority.

The fact remains, however, that we do not have the transcript from the May 17, 2016 hearing. For that reason, we cannot say one way or the other whether the trial court's award was supported by substantial competent evidence or amounted to an abuse of discretion. Because Edward did not meet his burden to designate the record with facts supporting his arguments, we will not disturb the trial court's ruling on appeal. Edward's argument fails.

Moreover, on appeal, Edward has given the panel a recitation of what he sees as relevant facts but has failed to cite any legal authority in support of his position. The failure to support a point with pertinent authority is akin to failing to brief the issue.

26

*University of Kan. Hosp. Auth.*, 301 Kan. at 1001. And when an appellant fails to brief an issue, that issue is deemed abandoned. *Superior Boiler Works, Inc.*, 292 Kan. at 889. Accordingly, Edward has abandoned this issue.

Affirmed.